IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )   Case No. 4:17-cv-00131-BYP
                                    )
       vs.                          )   Hon. Benita Y. Pearson
                                    )
S.H. BELL COMPANY,                  )
                                    )
            Defendant.              )
_____)

# UNITED STATES' SUPPLEMENTAL MEMORANDUM
# IN SUPPORT OF MOTION FOR ENTRY OF CONSENT DECREE

The United States has reviewed the *Second Submission of the Manganese Interest Group (MIG) regarding United States' Memorandum in Support of Motion for Entry of Consent Decree* ("Second Submission") (Ex. 1) and the *Third Submission of the Manganese Interest Group (MIG) regarding United States' Memorandum in Support of Motion for Entry of Consent Decree* ("Third Submission") (Ex. 2) and determined that nothing therein alters its belief that the proposed Consent Decree previously lodged with this Court is fair, reasonable, consistent with the purposes of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and the Clean Air Act, and in the public interest.

Neither the Second Submission nor Third Submission challenge the substance of the proposed Consent Decree. The Second Submission is limited to technical critiques of data analysis methods applied in certain peer-reviewed publications which were among a larger array of material supporting the need for the proposed Consent Decree. The Third Submission only

raises unsupported concerns regarding the United States' compliance with an alleged predicate to bringing an action under Clean Air Act Section 303, 42. U.S.C. § 7603. Neither Submission undermines the appropriateness of the proposed Consent Decree. The United States reiterates its request that this Court enter the proposed Consent Decree.[1]

## **Procedural Background**

On March 28, 2017, the United States filed a Motion for Entry of Consent Decree [Doc. 6] and Memorandum in Support [Doc. 7] (collectively, "Motion to Enter") seeking entry of a proposed Consent Decree, previously lodged with this Court on January 18, 2017 [Doc. 2-1], and resolving allegations that emissions of ambient manganese from a facility owned and operated by Defendant S.H. Bell Company ("S.H. Bell") in East Liverpool, Ohio and Ohioville, Pennsylvania (the "S.H. Bell Facility") present or may present an imminent and substantial endangerment to public health or welfare under CERCLA Section 106 and Clean Air Act Section 303. Under the proposed Consent Decree, Defendant S.H. Bell would conduct enhanced monitoring of ambient manganese from its Facility and would be subject to corrective action requirements if levels of ambient manganese exceeded certain specified monthly or annual triggers. *See* Doc. 2-1.

The Motion to Enter addressed the four comments received during the 30-day public comment period -- two from local residents questioning whether the Consent Decree provided

---

[1] Defendant S.H. Bell Company has consented to entry of the proposed Consent Decree and agreed not to withdraw from, oppose entry to, or challenge any provision of the Decree. *See* Doc. 2-1 at Para. 89. Many of S.H. Bell's obligations under the Decree, including certain fugitive dust control measures, took effect upon the date of lodging of the proposed Consent Decree with this court and S.H. Bell has been in general compliance with those obligations. These actions, in conjunction with enhanced agency oversight of the S.H. Bell Facility over the past year, appear to be having a beneficial impact on limiting ambient manganese emissions from the Facility, as off-site air monitoring stations have not recently recorded manganese levels in excess of the Consent Decree's proposed action triggers. A more complete understanding of S.H. Bell's emissions will be obtained once the fence-line air monitors are installed.

sufficient protections from potential health risks and two from industry-associated entities (including MIG) arguing that the public health concerns were much ado about nothing. *See* Doc 7 at 16-20. Having reviewed the comments, the United States determined that nothing therein justified withdrawal of its consent to the proposed settlement as fair, reasonable, and consistent with the purposes of CERCLA and the Clean Air Act.

On June 30, 2017, four months following the close of the public comment period, MIG provided its Second Submission of comments to the Department of Justice, with a courtesy copy to the Court. Although MIG characterizes the Second Submission as based on "newly available information," that is a rather strained interpretation. MIG's comments relate to peer-reviewed articles regarding the East Liverpool Health Study that were published in 2015 and 2016.[2] *See* Decl. of D. Lobdell (Ex. 3) at Para. 13. Regardless, the United States reviewed the Second Submission upon receipt and determined that it did not impact its conclusions regarding the appropriateness of the proposed Consent Decree. On July 7, 2017, the Court requested that the United States file a response to the Second Submission. *See* Doc. 8. On July 18, 2017, MIG emailed a Third Submission (Ex. 2) to the Department of Justice, this time making no pretense as to its timeliness.[3] Again the United States reviewed the Submission upon receipt and determined

---

[2] MIG's "hook" for its Second Submission is that the authors of the peer-reviewed papers recently published a response to comment regarding the articles. MIG's comments, however, do not appear to address the arguments made in the recent response to comment, but rather only aspects of the original peer-reviewed publications. *See*, *e.g.*, Ex. 1 at 2 ("Why has the lead researcher . . . nowhere reported in her peer-reviewed papers . . . .").

[3] It is with some hesitation that the United States includes a response to the Third Submission herein. The public comment period is not open-ended, but rather is limited to 30-days to provide for timely implementation of the proposed relief. Entry of the Consent Decree should not be continuously deferred to respond to new thoughts based on old information. MIG's Third Submission is based solely on activity that occurred prior to lodging of the Consent Decree and the arguments contained therein could have been presented during the public comment period. In order to conserve the Court's time, however, the United States is addressing the merits of the comment in this Supplemental Memorandum.

that it did not impact its conclusions regarding the appropriateness of the proposed Consent Decree.

## Manganese Interest Group's Second Submission

MIG states that it is "an *ad hoc* coalition of trade associations and companies interested in the scientifically sound evaluation and regulation of manganese" and whose "[m]embership is comprised of steel producers, metalworkers, chemical manufacturers, ferroalloy producers, and other similar stakeholders." *See* Doc. 7-4, Exs. 1-2. MIG's Second Submission presents very specific technical comments and questions regarding the methodology applied by the authors of certain peer-reviewed journal articles in analyzing certain health effects data. MIG further asserts that because its technical arguments "prove" that "an 'imminent and substantial endangerment' does not exist and is not supported by the facts alleged in the accompanying Complaint," the United States has failed to state a claim in its Complaint and, therefore, this Court lacks jurisdiction to enter the proposed Consent Decree. *See* Doc. 7-4 at 1; Ex. 1 at 5-6. The United States finds that neither MIG's jurisdictional argument nor the underlying technical issues warrant withdrawal of the proposed Consent Decree.

## MIG's Technical Arguments

MIG presents two "questions" in its Second Submission: (1) why were the peer-reviewed publications limited to analyses comparing East Liverpool residents with residents of Marietta, Ohio (two manganese-impacted communities), rather than against residents of Mt. Vernon, Ohio (a non-impacted community from which limited data had also been collected); and (2) why didn't the peer-reviewed publications compare East Liverpool to nationwide data. MIG then presumes that the authors declined to do so because it would have shown there was no problem in East Liverpool; hypothesizing that East Liverpool residents would have had similar levels of

4

impairment to non-manganese impacted Mt. Vernon residents and would have been within a nationwide "normal" range on the various analytical scales used by the researchers in assessing potential physical and psychological impairment.

These are relatively esoteric complaints regarding the data analysis methodology choices applied in the peer-reviewed publications. MIG's Second Submission does not question the validity of the underlying data regarding the extent of airborne manganese emissions impacting East Liverpool, the fact that certain residents in East Liverpool were assessed as having impairments consistent with manganism, or the public health hazard determinations made by the Agency for Toxic Substances and Disease Registry ("ATSDR"). The analytical conclusions presented in the peer-reviewed journal articles, while supporting an endangerment finding, were not the primary basis for the United States' endangerment claims. *See* Doc. 1 at Paras. 14-28.

The substance of MIG's Second Submission is addressed in the attached Declaration of Dr. Danelle Lobdell, which explains the decisions of the publications' authors (of which she was one) and why they stand by those decisions. *See* Ex. 3 at Paras. 15-21. Put simply, for their articles the authors chose to compare the East Liverpool and Marietta data sets, because they were the most robust data sets. These were the study locations where they had both health data and 10-year manganese exposure data for 186 individual residents. The authors viewed this comparison as more relevant than assessing East Liverpool residents against those in a location where they lacked manganese exposure data (Mt. Vernon) or a generalized nationwide comparison.

Dr. Lobdell also rejects MIG's assertion that a comparison of East Liverpool impairment data to the general population would show no problems, explaining that their analysis showed increased impairment in conjunction with manganese exposure even if all of the impaired

5

individuals were not outside of the "normal" range – i.e. long-term manganese exposure made the healthy, less healthy and the less healthy, injured.

## MIG's Jurisdictional Argument

MIG also argues that this Court lacks jurisdiction to enter the Consent Decree, because the United States' Complaint lacks sufficient facts to support an endangerment claim. MIG in effect asks the Court to *sua sponte* dismiss this matter for failure to state a claim. The facts pled by the United States in its Complaint should therefore be assessed in the same manner as with a Rule 12(b)(6) motion to dismiss, *i.e.* this Court should "accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to plaintiffs." *See*, *e.g.*, *Saumer v. Cliffs Natural Resources, Inc.*, 853 F.3d 855, 858 (6th Cir. 2017). As discussed below, the United States pled sufficient facts in its Complaint to support its endangerment claims. And the United States continues to believe in the accuracy of the facts as pled and is not seeking to amend or withdraw its Complaint in response to MIG's comments. This Court, therefore, has jurisdiction to enter the proposed Consent Decree.

The United States' Complaint asserted two claims against Defendant S.H. Bell; one under CERCLA's endangerment provision, 42 U.S.C. § 9606(a), and one under the endangerment provision of the Clean Air Act, 42 U.S.C. § 7603. *See* Doc. 1 at Paras. 34-53. These endangerment provisions are among those "Congress broadly drafted . . . to give appropriate government officials the right to seek judicial relief, or take other appropriate action to avert imminent and substantial threats to the environment or public health." *United States v. Reilly Tar & Chem. Corp.*, 546 F. Supp. 1100, 1107 (D. Min. 1982). The statutes specifically authorize orders to "abate such danger or threat" (CERCLA) or to "stop the emission of air pollutants" (Clean Air Act), but also provide the Court with flexibility in addressing the specific

endangerment by ordering such relief as may be necessary. *See* 42 U.S.C. §§ 7603, 9606(a). Neither provision provides for civil penalties.

Under Clean Air Act Section 303 and CERCLA Section 106, relief is warranted where the pollution or hazardous substance present "an imminent and substantial endangerment to public health or welfare or the environment . . . ."[4] 42 U.S.C. §§ 7603, 9606(a). Courts interpreting the endangerment standard have emphasized that "endanger means something less than actual harm. When one is endangered, harm is *threatened*; no actual injury need ever occur."[5] *See United States v. Ottati & Gross, Inc.*, 630 F. Supp. 1361, 1394 (D.N.H. 1985) (emphasis in original) *quoting Ethyl Corp. v. E.P.A.*, 541 F.2d 1, 13 (D.C. Cir. 1976) (discussing the Clean Air Act); *see also United States v. E.I. du Pont de Nemours & Co.*, 341 F. Supp.2d 215, 246 (W.D.N.Y. 2004) (discussing CERCLA).

The terms "imminent" and "substantial" have likewise been interpreted by the courts to provide considerable discretion to address potential endangerments consistent with the primary importance of protecting the public health, welfare, and environment. As the *du Pont* court found, "[a]n endangerment is considered 'imminent' if factors giving rise to it are present, even though the harm may not be realized for years" and "substantial" if "there is reasonable cause for concern that someone or something may be exposed to a risk of harm . . . ." *See du Pont*, 341 F. Supp.2d at 247 (internal quotes omitted).

---

[4] The Clean Air Act provides for relief "upon receipt of evidence that a pollution source . . . is presenting an imminent and substantial endangerment to public health or welfare or the environment," while CERCLA requires only that "there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance . . . ." *See* 42 U.S.C. §§ 7603, 9606(a).

[5] Some courts have gone further and emphasized that the use of "may present" in CERCLA Section 106(a) establishes that the United States "does not have to prove that an 'imminent and substantial endangerment' actually exists." *See United States v. E.I. du Pont de Nemours & Co.*, 341 F. Supp.2d 215, 246 (W.D.N.Y. 2004).

7

The United States' Complaint pled extensive facts supporting the claim that releases of airborne manganese – a hazardous substance – may present an imminent and substantial endangerment to the residents of East Liverpool, Ohio and Glasgow, Pennsylvania. It described ATSDR's multiple determinations that manganese exposures to residents constituted a "public health hazard" (Doc. 1 at Paras. 14-17); detailed the health risks posed by manganese exposure (*id.* at Paras. 18-24); provided examples of extreme manganese emissions measured near the S.H. Bell Facility (*id.* at Paras. 25-26); and referenced the peer-reviewed, published, journal articles finding an association between those emissions and observed health impairments to East Liverpool residents (*id.* at Paras. 27-28).

These robust pleadings are more than sufficient to state claims for endangerment under CERCLA and the Clean Air Act. *See Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009) *quoting Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (Civil complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). The questions raised in MIG's Second Submission do not show that the allegations set forth in the Complaint are not well founded. Because the Complaint pleads a claim for which relief may be granted, this Court has jurisdiction to enter the proposed Consent Decree.

### Manganese Interest Group's Third Submission

This week's submission from MIG was limited to an assertion that the United States had failed to comply with a predicate to bringing an action under Clean Air Act Section 303: consultation with State and local authorities to attempt to confirm the accuracy of information supporting an endangerment finding. Regardless of whether the cited statutory language applies a consultation requirement to claims filed in the district court and not just to orders issued by

EPA, as indicated by the preceding and succeeding sentences,[6] the United States did in fact consult with State and local authorities regarding the accuracy of the information supporting its endangerment finding, contrary to MIG's contention.

The attached November 15, 2016 letter from Robert Kaplan, Acting Regional Administrator EPA Region 5, to Craig Butler of Ohio EPA, provided a list of the relevant underlying information in advance of a November 16, 2016 conference call consultation with Ohio EPA and Pennsylvania Department of Environmental Protection.[7] *See* Ex. 4 and Decl. of S. Patel (Ex. 5). On December 1, 2016, the United States held a similar discussion in person with the mayors of East Liverpool and Glasgow. *See* Ex. 5 at Para. 6. The correspondence, conference call, and meeting satisfy any applicable consultation requirement. MIG's Third Submission does not demonstrate that EPA failed to consult with State and local authorities pursuant to Clean Air Act Section 303. Nor does the Third Submission even address the United States' claim under CERCLA Section 106(a). Accordingly, this Court has jurisdiction to enter the proposed Consent Decree.

## **Conclusion**

The settlement embodied in the proposed Consent Decree constitutes the United States' best efforts to resolve this case fully and fairly in a manner consistent with the interests of the

---

[6] "If it is not practicable to assure prompt protection of public health or welfare or the environment by commencement of such a civil action, the Administrator may issue such orders as may be necessary to protect public health or welfare or the environment. Prior to taking any action under this section, the Administrator shall consult with appropriate State and local authorities to attempt to confirm the accuracy of the information on which the action proposed to be taken is based. Any order issued by the Administrator under this section shall be effective upon issuance and shall remain in effect for a period of not more than 60 days . . . ." 42 U.S.C. § 7603.

[7] While Ohio EPA initially questioned ATSDR's conclusion regarding on ongoing public health hazard, it did not question the underlying data – the information supporting the endangerment claim. ATSDR's response to Ohio EPA's concerns was previously filed as an attachment to the *Memorandum in Support of Motion to Enter*. Doc. 7-5.

public.  It strikes an appropriate balance, addressing the concerns of both those who believe airborne manganese emissions pose a great threat to residents of East Liverpool and Glasgow and those who are more skeptical of such concerns.  The Consent Decree requires enhanced monitoring of airborne emissions originating from the S.H. Bell Facility and only requires additional corrective action if emissions exceed specified monthly or annual limits.  Application of the provisions in the Decree will provide significant information as to the extent of any endangerment posed by the S.H. Bell Facility and require it to be appropriately addressed.

Having reviewed the prior public comments and MIG's Second Submission and Third Submission, the United States continues to believe that the proposed Consent Decree is fair, reasonable, consistent with the purposes of CERCLA and the Clean Air Act, and in the public interest.

THEREFORE, the United States respectfully reiterates its request that the Court enter the proposed Consent Decree.

//

//

//

//

//

//

//

//

//

Dated: July 21, 2017.

                                          Respectfully submitted,

                                          PLAINTIFF UNITED STATES

                                          JEFFREY H. WOOD
                                          Acting Assistant Attorney General
                                          Environment and Natural Resources Division


                                          */s/ Jeffrey A. Spector*
                                          JEFFREY A. SPECTOR
                                          Senior Attorney
                                          Environmental Enforcement Section
                                          Environment and Natural Resources Division
                                          U.S. Department of Justice
                                          P.O. Box 7611
                                          Washington, DC  20044-7611
                                          Phone:  (202) 514-4432
                                          Jeffrey.Spector@usdoj.gov


                                          DAVID A. SIERLEJA
                                          Acting United States Attorney
                                          STEVEN PAFFILAS
                                          Assistant U.S. Attorney
                                          United States Attorney's Office
                                          801 West Superior Avenue; Suite 400
                                          Cleveland, OH  44113
                                          (216) 622-3698

OF COUNSEL:

JOHN C. MATSON
Associate Regional Counsel
U.S. EPA, Region 5
Office of Regional Counsel
77 W. Jackson Blvd. (C-14J)
Chicago, IL  60604

CHARLES MIKALIAN
Associate Regional Counsel
U.S. EPA, Region 5
Office of Regional Counsel
77 W. Jackson Blvd. (C-14J)
Chicago, IL  60604

HUMANE ZIA
Senior Assistant Regional Counsel
U.S. EPA, Region 3
Office of Regional Counsel
1650 Arch Street (3RC10)
Philadelphia, PA  19063

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing *Supplemental Memorandum in Support of Motion for Entry of Consent Decree* was served on this date via email upon the following individual:

> Scott R. Dismukes
> Eckert Seamans
> 600 Grant Street, 44th Floor
> Pittsburgh, PA 15219
> sdismukes@eckertseamans.com

| | |
|---|---|
| 7/21/2017 | /s/ Jeffrey A. Spector |
| Date | Jeffrey A. Spector |