PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) CASE NO. 4:17CV0131 |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| S.H. BELL COMPANY, | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| Defendant. | ) [Resolving ECF No. 6] |

Pending before the Court is Plaintiff the United States of America's Motion for Entry of Consent Decree (ECF No. 6), filed after the public comment period.

The United States, at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), filed this action under the Clean Air Act and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). The Complaint (ECF No. 1) names S.H. Bell Company[1] as Defendant and seeks injunctive relief under Sections 113(b) and 303 of the Clean Air Act, 42 U.S.C. §§ 7413(b) and 7603, and Section 106 of CERCLA, 42 U.S.C. § 9606, to address airborne manganese emissions from Defendant's

---

[1] This is not the first time that the undersigned has dealt with a case involving S.H. Bell Company. In *Elmer v. S.H. Bell Co.*, No. 4:13CV2735 (N.D. Ohio filed Dec. 11, 2013) (Pearson, J.), city residents brought an action for claims arising from purported harm sustained due to manganese and chromium emissions into the air generated by the facilities' operations. After the Sixth Circuit ruling in *Abrams v. Nucor Steel Marion, Inc.*, 694 Fed.Appx. 974 (6th Cir. 2017), the Court dismissed without prejudice Plaintiffs' claims in *Elmer*.

(4:17CV0131)

plant that spans across the Ohio-Pennsylvania border in East Liverpool, Ohio and Ohioville, Pennsylvania (the "East Liverpool Facility").

The United States lodged with the Court a proposed Consent Decree (ECF No. 2-1) between the parties to resolve the allegations in the Complaint (ECF No. 1), pending public notice and comment on the Consent Decree. According to the United States, the proposed Consent Decree (ECF No. 2-1) provides a carefully tailored remedy that acknowledges the dispute between the parties, while providing appropriate protection to residents who live near the East Liverpool Facility. ECF No. 7 at PageID #: 88-89. Defendant has consented to entry of the Consent Decree and agreed not to withdraw from or oppose entry of it by the Court, or challenge any provision of the Decree. *See* Proposed Consent Decree (ECF No. 2-1) at PageID #: 56, ¶ 89. Many of Defendant's obligations under the Consent Decree, including certain fugitive dust control measures, took effect on January 18, 2017 – the date of lodging of the proposed Consent Decree (ECF No. 2-1) with the Court – and Defendant has been in general compliance with those obligations. ECF No. 9 at PageID #: 166 n. 1.

The United States asserts Defendant was represented by experienced counsel well-versed in environmental law and procedure throughout the extensive settlement negotiations, which occurred over the course of a number of months. In addition, the settlement embodied in the proposed Consent Decree (ECF No. 2-1) is the result of good-faith, arms-length bargaining between attorneys for both parties. ECF No. 7 at PageID #: 94. The settlement primarily requires Defendant to identify the scope of ambient manganese-laden particulate matter exiting the East Liverpool Facility, while establishing a protocol for S.H. Bell and U.S. EPA

2

(4:17CV0131)

coordination in addressing occurrences where emissions exceed a minimal risk level ("MRL") for exposure to the substance. The proposed Consent Decree (ECF No. 2-1) requires several measures to provide both immediate and long-term reductions in fugitive manganese emissions. These safeguards include: (1) fenceline monitoring with EPA-approved monitors and required steps to investigate and, if needed, take corrective action if emissions exceed specified trigger levels; (2) a tracking system for manganese materials and video recordings of certain facility operations to help the company and regulators determine the source of any manganese emissions detected in the future; and, (3) implementation of identified fugitive dust control measures to further reduce the potential for excessive manganese emissions. *See* ECF No. 7 at PageID #: 89-91.

In accordance with CERCLA § 122(d)(2), 42 U.S.C. § 9622(d)(2), 28 C.F.R. § 50.7, and ¶ 89 of the proposed Consent Decree (ECF No. 2-1 at PageID #: 56), the United States held a public comment period, *see* 82 Fed. Reg. 8436-02 (Jan. 25, 2017), 2017 WL 347300, during which it received two comments from local residents and two comments from industry-associated entities. *See* ECF Nos. 7-1 (Commenter A),[2] 7-2 (Gary Craig), 7-3 (Gradient Corp.), and 7-4 (the Manganese Interest Group (MIG)[3]). The public comment period began on January

---

[2] The identity of "Commenter A" has been redacted on personal privacy grounds due to inclusion of personal medical information in the body of the comment.

[3] The MIG is an *ad hoc* coalition of companies and trade associations interested in the "scientifically sound evaluation and regulation of manganese." ECF No. 7-4 at PageID #: 138 n. 1.

(4:17CV0131)

25, 2017, and concluded on February 24, 2017. No request to extend the comment period was made. The public comment period is not open-ended, but rather was limited to 30 days.

The Court received a Second Submission of the MIG regarding the United States' Memorandum in Support of Motion for Entry of Consent Decree, dated June 30, 2017 (ECF No. 9-1).[4] On July 7, 2017, the United States was ordered to consider and file with the Court the Second Submission along with the United States' response to this supplemental public comment. *See* Order (ECF No. 8). Thereafter, the Court received a Third Submission of the MIG, dated July 18 , 2017 (ECF No. 9-2). On July 21, 2017, the United States filed a Supplemental Memorandum in Support (ECF No. 9) that responds to the MIG's Second and Third Submissions.[5]

According to the United States, manganese is a hazardous air pollutant under the Clean Air Act and a hazardous substance under CERCLA. ECF No. 7 at PageID #: 82. The Complaint (ECF No. 1) alleges "[a]t certain concentrations, manganese is a neurotoxin and causes neuromotor and neuropsychological deficits, including tremors, balance issues, negative

---

[4] The Court also received a letter dated July 21, 2017, with attachments, from Scott R. Dismukes, counsel for S.H. Bell Company. Attorney Dismukes requests that the Court consider new ambient air manganese data for January through April of 2017 and all of 2016 that was not available to the parties at the time of the execution of the proposed Consent Decree (ECF No. 2-1) in evaluating the Second Submission of the MIG.

[5] In addition, the Court received a Fourth Submission of the MIG, dated July 25, 2017, which is late because it was received over five months following the close of the public comment period. *See United States v. City of Akron*, 794 F. Supp.2d 782, 807 (N.D. Ohio 2011) (Adams, J.) (noting *amicus curiae* briefs filed over a year after the conclusion of the public comment period were "woefully late under any standard").

(4:17CV0131)

cognitive effects, and mood changes." ECF No. 1 at PageID #: 1, ¶ 1. The comments from local residents (ECF Nos. 7-1 (Commenter A) and 7-2 (Gary Craig)) discuss personal experiences with environmental conditions allegedly associated with the East Liverpool Facility and request that Defendant cease operations until it can prove it is not emitting harmful pollutants and/or handles all material within contained areas. The comments from the industry-associated entities (ECF Nos. 7-3 (Gradient Corp.) and 7-4 (MIG)) take issue with the United States' evaluation of the underlying facts and the merits of the claim that manganese emissions from the East Liverpool Facility may present an imminent and substantial endangerment, but otherwise do not critique the terms and conditions of the proposed Consent Decree (ECF No. 2-1). Specifically, Gradient Corp. states "[o]ur overall comment in this matter is that the Consent Decree and associated Complaint (US DOJ, 2017) are inconsistent with the best available scientific evidence for human health risks from exposure to [manganese], and, therefore, provide no scientific basis for the conclusion that [manganese] exposures in the East Liverpool community represent an imminent public health hazard." ECF No. 7-3 at PageID #: 114. The Court agrees with the United States that "[t]here is, and most likely will continue to be, vigorous scientific and policy debate as to what level of exposure to airborne manganese should be considered safe." ECF No. 7 at PagerID #: 99 n. 6.[6]

---

[6] *Compare* the Agency for Toxic Substances and Disease Registry's ("ATSDR") *Toxicological Profile for Manganese*, which included a chronic-duration (365 days or greater) inhalation MRL of 0.3 micrograms per cubic meter μg/m$^3$, https://www.atsdr.cdc.gov/toxprofiles/TP.asp?id=102&tid=23, and Gradient Corp.'s position that "the best available science suggests that an Exceptional Action Level of 10

(continued...)

(4:17CV0131)

The MIG questions whether the Complaint (ECF No. 1) sufficiently pleads a claim under Section 303 of the Clean Air Act and Section 106 of CERCLA to provide the Court with subject-matter jurisdiction to evaluate the proposed Consent Decree (ECF No. 2-1). According to the MIG, the Complaint (ECF No. 1) and proposed Consent Decree (ECF No. 2-1) are "riddled with falsehoods and transparent scientific distortions such that they cannot reasonably be said to allege a valid 'imminent and substantial endangerment.'" ECF No. 7-4 at PageID #: 138. *See also* ECF No. 9-1 at PageID #: 182. While the MIG may disagree with the United States regarding the strength of the underlying evidence supporting the endangerment allegations in the Complaint (ECF No. 1), there can be no question that the claims are sufficiently pled and the Court, therefore, has jurisdiction to enter the Consent Decree. *See Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 630 (6th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (civil complaint need only "contain sufficient factual matter" to be "plausible").

The Second Submission of the MIG (ECF No. 9-1) sets forth technical critiques of the data analysis methods applied in certain peer-reviewed journal articles regarding data from the East Liverpool Health Study that were published in 2015 and 2016, which, according to the United States, were among a larger array of material supporting the need for the proposed Consent Decree (ECF No. 2-1). ECF No. 9 at PageID #: 165.[7] The Third Submission of the

---

[6](...continued)
µg/m$^3$ respirable [manganese] air would be sufficiently health protective." ECF No. 7-3 at PageID #: 119.

[7] The substance of the Second Submission is addressed in the Declaration of
(continued...)

MIG (ECF No. 9-2) raises only unsupported concerns regarding the United States' compliance with 42 U.S.C. § 7603, an alleged predicate to bringing an action under Section 303 of the Clean Air Act.[8] Moreover, the arguments contained therein could have been timely presented during the public comment period. Neither the Second Submission (ECF No. 9-1) nor Third Submission (ECF No. 9-2) of the MIG challenge the substance of the proposed Consent Decree (ECF No. 2-1).

The Court concludes that the public comments have been adequately answered by the responses found in ECF Nos. 7 and 9. The proposed Consent Decree (ECF No. 2-1) appropriately addresses the concerns of Commenter A and Mr. Craig. Moreover, all comments from the industry-associated entities (ECF Nos. 7-3 (Gradient Corp.) and 7-4 (MIG), 9-1 (Second MIG), and 9-2 (Third MIG) regarding what level of exposure to airborne manganese should be considered safe were taken into consideration by the parties and their counsel in negotiating the proposed Consent Decree (ECF No. 2-1). ECF No. 7 at PageID #: 99. The proposed settlement is fair, reasonable, fully consistent with the purposes of the Clean Air Act and CERCLA, protective of human health and the environment, and the balance struck by the parties is

---

[7](...continued) Danelle T. Lobdell, Ph.D., M.S. which explains the decisions of the publications' authors (of which she was one) and why they stand by those decisions. *See* ECF No. 9-3 at PageID #: 207-10 at ¶¶ 15-21.

[8] Contrary to the MIG's contention, the United States did in fact consult with State and local authorities regarding the accuracy of the information supporting its endangerment finding. *See* Letter, dated November 15, 2016, from U.S. EPA to Ohio EPA (ECF No. 9-4) and Declaration of Shilpa Patel (ECF No. 9-5) at PageID #: 215, ¶ 6.

(4:17CV0131)

consistent with the public interest.  *United States v. Lexington-Fayette Urban Cty. Gov't*, 591 F.3d 484, 489 (6th Cir. 2010).

      Accordingly, Plaintiff's Motion for Entry of Consent Decree (ECF No. 6) is granted.

      IT IS SO ORDERED.

| | |
|---|---|
| February 14, 2018 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson<br>United States District Judge |